IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| COREY HINTON, | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff | : | |
| | : | |
| v. | : | No. 08-0295 |
| | : | |
| FRANKLIN J. TENNIS, et al. | : | |
| Defendants | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                         **October 27, 2010**

Corey Hinton, a former inmate at the State Correctional Institution at Rockview, brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Fifth and Sixth Amendments to the United States Constitution. The defendants are several officials of the correctional facilities in which Mr. Hinton has been incarcerated. They have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] Mr. Hinton has not responded to the motion, and the time to do so has expired. For the following reasons, I will grant the motion in its entirety, and enter judgment in favor of the defendants.

**I. BACKGROUND**

In 1995, as a result of two separate and unrelated incidents, Mr. Hinton was

---

[1] I note that the defendants filed a motion for summary judgment, see Document #29, yet filed a brief in support of its motion to dismiss, see Document #30. The pleadings in this case are closed, and discovery is complete. Although the brief does not provide a standard of review, I will construe the motion as one for summary judgment.

convicted of attempted homicide and car theft. Three years later, the attempted homicide charge was reduced to aggravated assault. He was sentenced on both convictions to four to six years' imprisonment to run consecutively, and served the maximum time. In 2004, Mr. Hinton was convicted of a drug offense, and sentenced to two to five years' imprisonment. The record indicates that he was "maxed out" on that conviction on November 29, 2009.

Mr. Hinton testified at his deposition that, in early 2006, while at the State Correctional Institution at Rockview, he applied for pre-release to a community corrections center. On May 15, 2006, Mr. Hinton was told by his counselors at Rockview that they would support him for pre-release. He was also told, however, that no final decision would be made until letters were sent to the district attorney, the sentencing judge, and any victims. Those letters were mailed on May 22, 2006. Because no replies were received within thirty days, another meeting was scheduled, and he met with his counselors at Rockview on July 10, 2006.

Two weeks before that meeting, Mr. Hinton was denied parole based on his need to attend a required "batterers" group. The administration at Rockview, nevertheless, approved Mr. Hinton for pre-release. On October 16, 2006, Mr. Hinton was transferred to the Joseph Coleman Center in Philadelphia, a community corrections center.

On January 4, 2007, Defendant Evans Gary, Jr., one of the regional directors of the Coleman Center, issued a misconduct charge against Mr. Hinton alleging that Mr. Hinton

had threatened a staff member in the early hours of January 1, 2007. Such conduct would be considered a violation of one of the conditions of Mr. Hinton's pre-release program. Mr. Hinton has consistently maintained that he was asleep at the time of the alleged offense, and thus was innocent of the charges. Shortly thereafter, Mr. Hinton was transferred to the State Correctional Institution at Graterford. Hearing Examiner Mary Canino held a hearing at Graterford on January 8, 2007 on the misconduct charges. Mr. Hinton insists that he submitted a witness form to Miss Canino at the hearing, although there is no record of the form and he does not have a copy of it. Miss Canino dismissed the charges without prejudice because the misconduct report did not specifically allege the threatening behavior with which Mr. Hinton was charged.

A second misconduct report for the same incident was issued by Mr. Gary. After a hearing on February 8, 2007, Miss Canino dismissed the charges without prejudice for the report's same deficiency, i.e., failure to allege the threatening behavior. Mr. Hinton did not submit a witness form prior to the second hearing.

Mr. Hinton was transferred to Rockview, where on March 23, 2007, he received yet another set of charges stemming from the January 1, 2007 incident. A hearing on those charges was conducted on March 27, 2007.[2] Mr. Hinton also did not submit a witness form for that hearing. Defendant Robert Reed, the hearing examiner, found Mr. Hinton guilty of both charges in the misconduct report, i.e., threatening a staff member

---

[2] Mr. Hinton recalls the hearing taking place on March 23, 2007. The record reflects, however, that the hearing was held on March 27, 2007. See Document #29-3 at 11-12.

and violating a condition of pre-release. In his report of hearing action, Mr. Reed stated that he "believes the staff member's written report over the denial of inmate Hinton that Hinton did make a threat towards staff when he stated that he was going to kick Supervisor Bennett's f**king ass." Mr. Reed sanctioned Mr. Hinton by revoking his pre-release status. Mr. Hinton received no time in disciplinary custody as a result of being found guilty of these charges.

Mr. Hinton appealed Mr. Reed's decision to the Program Review Committee, the superintendent of Rockview, and the Chief Hearing Examiner of the Department of Corrections. Mr. Reed's decision was upheld at each level of review.

In his amended complaint, Mr. Hinton claims that he had been granted a liberty interest through the Pennsylvania Board of Probation and Parole when he was "granted parole,"[3] released from Rockview, and placed in the Coleman Center. He further contends that the revocation of his "parole constitutes grounds for claiming deprivation of a constitutionally-based liberty interest, which was illegally terminated through his removal from Coleman Hall and transfer to SCI - Graterford and further transfer to SCI - Rockview." He seeks the reversal of the hearing examiner's decision, expungement of the incident from his record, re-instatement of his pre-release status, and punitive damages in the amount of $10,000 plus costs and attorneys fees.

---

[3] I note that parole and pre-release are not interchangeable terms. Mr. Hinton was denied parole in June 2006, but was granted pre-release a few months thereafter.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex

Corp. v. Catrett, 477 U.S. at 322.  Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  Id. at 252.  If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent.  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.  DISCUSSION

In his amended complaint, Mr. Hinton alleges that he was denied both his right to due process and his liberty interest when he was transferred from the Coleman Center to Graterford without a hearing, and when he was not permitted to call witnesses at his misconduct hearings.  He indicates that the liberty interest was granted to him by the Pennsylvania Board of Probation and Parole, as is evidenced by his placement into the Coleman Center.  Mr. Hinton contends that by terminating that liberty interest, the Department of Corrections violated his Fifth and Sixth Amendment rights.

Title 42 of the United States Code § 1983 provides remedies for deprivations of rights established in the Constitution or federal laws.  It does not, by its own terms, create

substantive rights. Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). Section 1983 provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To have succeeded on his due process claim, Mr. Hinton must have first demonstrated that he was deprived of a liberty interest when his pre-release status was revoked, and he was transferred from the Coleman Center to Graterford. "Protected liberty . . . interests generally arise either from the Due Process Clause or from state-created statutory entitlement." Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (quoting Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000)); see also Asquith v. Dep't of Corrections, 186 F.3d 407, 409 (3d Cir. 1999). The Supreme Court has recognized that "as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Asquith, 186 F.3d at 410 (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)); see also Wilkinson v. Austin, 545 U.S. 209, 221 (2005) ("We have held that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement"); Meachum v. Fano, 427 U.S. 215, 225

(1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose); Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (transfer of an inmate to a prison in another state did not implicate due process clause).

Here, the record demonstrates that the only loss suffered by Mr. Hinton as a result of the misconduct report and subsequent conviction was the revocation of his pre-release status. Mr. Hinton was not subjected to confinement that exceeded the sentence imposed upon him or that otherwise violated the Constitution, and therefore no liberty interest created by the Due Process Clause itself was impinged. See Hewitt, 459 U.S. at 468 ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"). Moreover, Mr. Hinton's change in classification level does not involve a liberty interest protected by the Due Process Clause. Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976) (prison officials have discretion over prisoner classifications and prisoners have no legitimate Due Process concerns in them).

Mr. Hinton is also unable to demonstrate that he was deprived of a state-created liberty interest. In Sandin v. Conner, the Supreme Court recognized that such interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of

its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995); see also Shoats, 213 F.3d at 143; Asquith, 186 F.3d at 412. In ascertaining whether something is an "atypical and significant" hardship, a court considers "what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Asquith, 186 F.3d at 412 (quoting Griffin v. Vaughn, 112 F.3d 703, 706 n.2 (3d Cir. 1997). Consequently, the focus of this inquiry should be on the nature of the deprivation. See Sandin, 515 U.S. at 481-482. Although an inmate who is transferred from the Coleman Center to Graterford and/or Rockview faces additional restrictions, the transfer does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. See Fraise v. Terhune, 283 F.3d at 522. A sentenced state prisoner can reasonably expect to be housed in a state correctional institution during his term of imprisonment. It is part of the ordinary incidents of prison life. The nature of being deprived of one's pre-release status does not impose an atypical and/or significant hardship on a prisoner.

Accordingly, because Mr. Hinton was not deprived of a legally recognized liberty interest, he cannot show a violation of due process. Even if Mr. Hinton could show, however, that he was denied a liberty interest, the Department of Corrections still provided him with adequate procedures under the circumstances. Transfers to the most harsh prison conditions trigger only minimal procedures, and even then, Due Process does

not require prior notice of the transfer or the right to call witnesses as long as the inmate is provided with a meaningful opportunity to challenge the grounds of his segregation. In Hewitt v. Helms, the Supreme Court considered the process due inmates assigned to administrative custody, holding that in those situations, an "informal, non-adversary review" at which the prisoner has the opportunity to state his views, satisfies the requirements of due process:

> An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective. So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the D

459 U.S. at 476; see also Wilkinson, 545 U.S. at 217 (informal procedures giving notice for basis of placement in a "supermax" facility, an opportunity for rebuttal at a hearing and multiple levels of review satisfied due process). While Mr. Hinton's transfer from a community corrections center to a state prison is much less severe than a transfer to a "supermax" facility, he is not entitled to any more procedures than an inmate facing segregated confinement.[4] Mr. Hinton was provided with notice of the charges, and was given an opportunity to present his side to the hearing examiner. He also took advantage

---

[4] I note that this is not a case where good-time credit is at stake as it was in Wolff v. McDonnell, 418 U.S. 539 (1974), which would require a more formalized adversarial proceeding.

10

of the opportunities for subsequent review of the hearing examiner's decision. No further process was required.

In conclusion, because Mr. Hinton was not deprived of a constitutionally-based liberty interest when his pre-release status was revoked, he cannot establish a denial of his constitutional right to due process.

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COREY HINTON, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| v. | : | No. 08-0295 |
| | : | |
| FRANKLIN J. TENNIS, et al. | : | |
|     Defendants | : | |

## O R D E R

**AND NOW**, this 27th day of October, 2010, upon consideration of the defendants' unanswered motion for summary judgment (Document #29), it is hereby ORDERED that the motion is GRANTED in its entirety.

The Clerk of Court is directed to mark this case CLOSED for all purposes.

BY THE COURT:


/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COREY HINTON, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| v. | : | No. 08-0295 |
| | : | |
| FRANKLIN J. TENNIS, et al. | : | |
|     Defendants | : | |

## O R D E R  O F  J U D G M E N T

**AND NOW,** this 27th day of October, 2010, in accordance with my Order granting the defendants' motion for summary judgment, and in accordance with Federal Rule of Civil Procedure 58, judgment is hereby entered in favor of the defendants, and against the plaintiff.

                                    BY THE COURT:

                                    /s/ Lawrence F. Stengel
                                    LAWRENCE F. STENGEL, J.